Good morning, ladies and gentlemen. Our first case for argument this morning is McLaughlin v. PNC Bank. Mr. Salem. May it please the Court. My name is Maurice James Salem. Your Honor, in this case, the District Court dismissed the complaint by granting a Rule 12b motion. The Court did not accept all the well-pleaded facts and it relied on facts that are outside the pleading. The opposition argues that the District Court can rely on these facts from outside the pleading by taking judicial notice of them. My contention is that these outside facts do not fall within the Rule of Evidence 201 because the outside facts are the following. That the appellants committed fraud on the Court by not being real tenants and that by using obstructionist tactics. However, in the years of litigation in the State Court and in the District Court, the Bank never filed a counterclaim or filed a motion for sanctions. These facts were never adjudicated, in other words, the facts that the District Court relied upon and that the opposing counsel's claims are judicial notice. What facts? Like the ones that they weren't cooperative? No, they were cooperative. The facts were that there were not real tenants in the building, so they were committing fraud on the Court. That's what the District Court said and the fact that in the State Court, there were a lot of obstructionist tactics used, which is basically legal maneuvering, is what the lower court said. But those don't fall within Rule 201 for the Court to take judicial notice of. So, I believe the Court erred under Rule 12b and the other argument is that- Counsel, what is the basis for the claim against PNC Bank? It's not as if the Bank went out and conducted the eviction itself. This lawsuit seems to be about damage to property when some other people put the material on the curb. So, I don't understand what the basis of the claim against the Bank is. The basis of the claim against the Bank deals just with one incident during the eviction on September 30, 2006. The Bank itself ordered the people who cut the lawn to move the property out. The Bank manager himself ordered that. Yes, and that's not problematic since the Bank had an eviction order. Exactly. The argument seems to be that there was some deliberate destruction of the property. And how is the Bank responsible for that? Because, Your Honor, the Deputy Sheriff had previously handed a notice, a procedure for eviction. Within that procedure, Your Honor, I cited in my brief, Number 4 and 5, the Bank is to use reasonable care. And if there is inclement weather or rain, they are to cover the property. They didn't either. They didn't use reasonable care by using the folks, not professional movers, the folks who cut the grass to move the property outside the house. I'm just lost. It's a pretty basic rule of law that one group is not responsible for the acts of an independent contractor. If you hire an independent contractor to do something, the independent contractor is responsible for its own acts. But you aren't. Your allegation is essentially that PNC Bank hired an independent contractor. And the independent contractor made errors or works. Why, given normal rules of tort law, would the Bank be liable for the acts of the independent contractor? Your Honor, I disagree with you. The independent contractor… You don't think that's a doctrine in Illinois? It certainly is. It's a good point you bring up, Your Honor, with respect to independent contractor. I didn't think of it. And you always do this, Your Honor. It's a little late when it's in the court. Well, let me explain. The facts also allege that despite the independent contractor, despite their own agent, and despite the deputy sheriff, the Bank insisted on moving the property. And that's pleaded in the original complaint. Yes. So you're right. You're right. The independent contractor should have been sued and still could have been sued independently. However, that independent contractor relied on the Bank's insistence against the deputy's wishes and against their own. The lady that I cited, her name in my complaint, she's a real estate lady taking care of the building. She herself called and said to try to stop the Bank from insisting on moving the property. And so, Judge Easterbrook, maybe the independent contractor should be joined, but that- But it wasn't. It wasn't, but the point- The only defendant here is the Bank. And it now sounds like you're saying the basis of the Bank's liability is simply that it conducted an eviction at all. And that, given the state court's order, is not a possible argument. But, Your Honor, within the intentional tort, there's intent involved here. The Bank, because of malice, because of especially that manager that I mentioned, his name, the hard feelings he had, he insisted on the- And again, I wonder whether or not those individuals who cut the grass are an independent company. I would have to look into that. But those individuals were just, they didn't speak English, they were Spanish- What do you mean cut the grass? They're the ones the Bank hired to mow the lawn. Yeah, well, not this day, right? And not to move the property, correct. And so, they, I don't know whether or not they did it on the basis that there was a company that directed them, or that the Bank simply said, come on over and do this for us. I don't know if the Bank issued the 1099 or any of that. But I do know that it's not just negligence here, it's also intent. And the Bank insisted on it being moved, again, against the individuals who were moving it, and against the sheriff, and against their own person. The Bank manager's bad feelings from this in the past caused him to intentionally put a very expensive property outside on the lawn and damaged a great deal. Not just the furniture, personal, photo albums, clothes. It was horrific. And we've got pictures of it. Yeah, you've got pictures of it. Your clients are standing right there watching all of this, right? Correct. Your client didn't even step in to maybe pick up an album or all this very valuable stuff? Just watched? Your Honor, the deputy sheriff threatened to arrest both my client and myself if we didn't get out of the house. You weren't in the house. I'm talking about what they put in the yard. Well, while it was raining, it's a large, large house with large furnitures. It was at the end of the month. We made emergency calls for movers to come. We couldn't find any. And so there were efforts to mitigate the damages. Yes, and that will come out at the trial, what we did to mitigate damages. And so... What do you expect to happen on remand? On remand, Your Honor, we expect to proceed to discovery and to depose the bank's agent and depose the deputy sheriff and bring in the evidence that they didn't cover the material, they brought it out in inclement weather, and they used unprofessional movers to move it. How long ago did all this start? This was last year, on one incident on September 30th. No, I'm talking about the whole foreclosure and... Your Honor, I wasn't their attorney in the state court, but I believe it was a number of years in the state court, maybe four or five years. I'm not familiar with the state court. That's quite a few years. Quite a few years, yeah, and that's caused maybe the hard feelings on the side of the bank. And if I may address Judge Easterbrook's independent contractor idea, Your Honor, this is a case where the bank, with intent, compelled the individual who were cutting the grass to move the furniture. And I don't know whether those individuals cutting the grass did it under a separate corporate entity or did it on their own. You almost killed your rebuttal. Yeah, I see that. Do you want to sit down for a minute? Yes, thank you, Your Honor. Thank you, Mr. Salem. Mr. Tobias. Good morning, Your Honors. May it please the Court? I'm Richard Tobos, attorney for the Appalachian PNC Bank. My client spent seven years embroiled in litigation foreclosing on this property and then getting an eviction order. When the time came that they were finally going to be put into possession of the property by the county sheriff, and they knew it was going to be a contentious situation, and they wanted to follow all the DuPage County Sheriff's guidelines and they wanted to do everything right and by the book. So as the complaint and the pleadings, you know, the appellants admit, they sent a moving crew as the DuPage County Sheriff requires. They had their property manager, Sarah Hahn, meet them at the property. They brought tarps and covered everything with tarps. And they did it all under the supervision of a DuPage County Sheriff's deputy. That's admitted by the other side. They don't contest any of the, you know, that we followed any of the guidelines put out by the DuPage County Sheriff. The appellants now come before this Court asking to oppose additional requirements that just have no basis in Illinois law. A moving crew isn't enough for the appellants. They want professional movers. Refresh my recollection. Precisely where was this home? The home is in Burr Ridge, Illinois, which is in DuPage County. I'm familiar with the area. So a moving crew isn't enough. It has to be professional movers, even though the Sheriff's guidelines don't state that and the law doesn't state that. Putting tarps over the personal property isn't enough for the appellants. They want the tarps to be staked down so that they can't possibly blow off. They want a duty of reasonable care to be imposed on, you know, owners and eviction plaintiffs that has never been supported or found by any Illinois court or statute. And they even want the plaintiff to be responsible if the grass happens to be wet on the day of the eviction for any damage caused by the wet grass. You know, the appellants cite no law in support of any of their substantive positions in their brief or their reply. There's no law showing that the duty of an owner to care for personal property after an eviction, and in fact, we've cited to Illinois law that goes to the contrary. There's no law showing that if such a duty existed, that it would deviate from the guidelines already put out by the Sheriff of DuPage County, which is a lawful authority that's in charge of enforcing eviction orders in Illinois. And there's no law showing that trespass to chattels applies when enforcing a lawful eviction order. Prior to today, did you consider the lawn mowers to be independent contractors for the moving? We did consider them to be independent contractors. No, no, no. Did you or didn't you prior to today? You figured they were independent contractors? Yes. Did you raise the issue? We did not. Why? Because we just thought that the whole—we felt that that would be more appropriate once there were actual facts on the record on our side, but we felt that their complaint on its face was invalid, and we brought it to 12b-6. So you had a perfect defense, but you decided not to use it? We didn't want to put the cart before the horse, Your Honor. I mean, we have no final answer. Raising a defense that stops the thing in its tracks is not exactly putting the cart before the horse. You didn't put the cart before the horse. That's how I see it, or how I saw it. That's interesting. I mean, to provide additional detail, Sarah Hahn, who is the realtor who was present on the scene and who hired the lawnmowers, Acosta Landscaping— Who told them to move the furniture? To move the furniture? Yeah, who told them to move it? Sarah Hahn did. Oh. And she—before, when we knew there was a lockout scheduled for this property, because of the prior litigation and the circumstances, PNC wanted to be very careful, and so we went over the sheriff's posted eviction procedures with Sarah Hahn, who hired the movers, and we told her, you need to follow these to the letter, and that's what it came down to. If the DuPage County Sheriff has a policy that the plaintiff is required to remove the personal property and put it outside, that's publicly available on their website. Not every county in Illinois does, but in DuPage they do. And we wanted to follow the procedure 100 percent by the book. That was what we wanted to do, and that was what Sarah Hahn was instructed to do, and what I believe she instructed the actual movers to do. Although, again, I wasn't present at the lockout, but I did speak to her prior to it. So, again, there's no law showing that trespass to chattels or conversion applies when enforcing a lawful eviction order. There is, in fact, state law that goes against that and says that within the scope of an eviction order, those torts don't apply when you're enforcing a lawful order, and that's what happened here. When you call it a lockout, you mean somebody locked the doors so nobody could get in? What's a lockout? A lockout is a colloquial term for an eviction. It is? Hmm? It is? That means eviction? Yes, it does. Well, it means the actual day that the sheriffs physically go out and evict people from a property. That's what a lockout is. It's, again, it's... So somebody isn't locked out, I guess. Well, they do get locked out after the sheriff goes in, they remove the human occupants from the property. Depending on the county, they may remove the personal property or they may have the plaintiff remove it or not. In Cook County, for instance, the sheriff doesn't remove personals and doesn't require the plaintiff to do so. But in DuPage, they do. And so that's part of the lockout procedure, too. And then after all that is done, the locks are changed, hence lockout. And then it's a lockdown, I think. So this court is applying and interpreting Illinois state law. And so it has the responsibility to try to rule as it believes the Illinois Supreme Court would rule. And the appellants are asking this court to create a standard of negligence from whole cloth that just has no basis in the law. And that would require professional movers and reasonable care, which is a vague standard and not at all like the specific instructions put out by the DuPage County Sheriff. We're asking the court to leave the status quo in Illinois as it is, as the sheriffs have decided. And the appellate courts and the Supreme Court apparently hasn't seen fit to create these standards. We're asking this court to leave the law the way it is in Illinois. Well, obviously the stuff is still in the yard, right? Sorry, what was that, Judge? It's not. Everything's yesterday. Oh, yeah. So whatever it is, the damage and whoever says it's damaged and all that valuable property, et cetera. And as Judge Easterbrook points out, where's the bank come in to be responsible for whatever they didn't protect or move out or something? I mean, you're right. The ship has sailed at this point. So, again, we're just asking the court to follow the existing law in Illinois and not invent a new standard that Illinois Supreme Court has not seen fit and the legislature hasn't seen fit to create. If the Supreme Court hasn't found a duty of reasonable care after a lockout to care for personal property in the almost 200 years that Illinois has been a state and evictions have been happening, then I think that speaks for itself. So unless there are more questions from the bench, we would respectfully request this court to uphold the trial court's ruling in this case. Mm-hmm. Thank you, counsel. Anything further, Mr. Salem? Yes, sir. Briefly, Your Honor, I just want to address your point. The individuals who cut the grass did not speak English, Your Honor, and based on their appearance, it doesn't seem that they have sufficient assets. So even if we go to sue them, it would be futile. That's another consideration for you to consider. And with respect to Ms. Sarah Hans, Your Honor, I have firsthand knowledge in front of me she did not want to move it. The deputy will testify to that. I have several other witnesses who will testify to that. It is that manager from the bank on the phone that insisted. If there's no other questions, thank you, Your Honor. Mm-hmm. Thank you. The case is taken under advisement.